# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

KEVIN BATES,

|  |  |  |  |
|---|---|---|---|
| | Petitioner, | : | Case No. 1:15-cv-817 |
| - vs - | | | District Judge Sandra S. Beckwith |
| | | | Magistrate Judge Michael R. Merz |

GEORGE D. CRUTCHFIELD, Warden,
  Warren Correctional Institution,

                                      :

                Respondent.

---

# REPORT AND RECOMMENDATIONS

---

This habeas corpus case, brought *pro se* by Petitioner Kevin Bates, is before the Court for decision on the merits on the Petition (ECF No. 1), the State Court Record (ECF No. 5), and the Return of Writ (ECF No. 6). Petitioner did not file a Reply.

Bates pleads the following grounds for relief

> **GROUND ONE:** The Trial Court violated the double jeopardy clause of the United States Constitution when it failed to merge offenses.
>
> **Supporting Facts:** Petition, ECF No. 1, PageID No. 20.
>
> **GROUND TWO:** The trial court violated the due process clause of the United States Constitution when it failed to exclude inadmissible, prejudicial, and irrelevant evidence aimed at inflaming the jury and not at providing actual evidence of guilt.
>
> **Supporting Facts:** Petition, ECF No. 1, PageID No. 23.
>
> **GROUND THREE:** Petitioner received ineffective assistance of trial counsel when his attorney invited and failed to correct or

1

object to prejudicial error which denied him the right to due process and equal protection under the United States Constitution.

**Supporting Facts:** Petition, ECF No. 1, PageID No. 26.

**GROUND FOUR:** The evidence at trial was insufficient to support the jury verdict and against the manifest weight of the evidence and violated Plaintiff's due process and equal protection rights under the United States Constitution.

**Supporting Facts:** Petition, ECF No. 1, PageID No. 27.

(Petition, ECF No. 1, PageID No. 1.)

**Procedural History**

On April 26, 2013, the Hamilton County Grand Jury indicted Bates on one count of aggravated robbery with  firearm specifications in violation of Ohio Revised Code § 2911.01(A)(1)(Count 1); one count of robbery in violation of Ohio Revised Code § 2911.02(A)(2)(Count 2); one count of tampering with evidence in violation of Ohio Revised Code § 2921.12(A)(1) (Count 3); one count of having weapons while under disability in violation of  Ohio Revised Code § 2923.13(A)(2)(Count 4); one count of having weapons while under disability in violation of Ohio Revised Code § 2923.13(A)(2)(Count 5); one count of carrying concealed weapons Ohio Revised Code § 2923.12(A)(2)(Count 6); one count of improperly handling firearms in a motor vehicle Ohio Revised Code § 2923.16(B)(Count 7); one count of having weapons while under disability Ohio Revised Code § 2923.13(A)(3)(Count 8); one count of carrying concealed weapons Ohio Revised Code § 2923.12(A)(2)(Count 9) and one count of felonious assault in violation of Ohio Revised Code § 2903.11(A)(2) with specifications.

Following a jury trial, Bates was found guilty of Counts 1-9 and not guilty on Count 10 and was sentenced to an aggregate term of sixteen years on December 12, 2013.   (State Court

2

Record, ECF No. 5, PageID No. 60.)

Bates, through counsel, appealed to the Court of Appeals of Ohio, First Appellate

District, Hamilton County, raising the following assignments of error:

> 1. The Trial Court erred by allowing the jury to hear inadmissible and highly prejudicial evidence about Mr. Bates's character.
>
> 2. The Appellant's convictions are against the weight and sufficiency of the evidence.
>
> 3. The Trial Court erred by failing to merge Mr. Bates' convictions for various weapons charges.

(Appellant's Brief, State Court Record, ECF No. 5, PageID No. 65.)

The First District set forth the facts of this case on direct appeal as follows:

> **[¶4]** Timothy Johnson was working as a confidential informant for the Cincinnati police. Following the instructions of his police handlers, he arranged to purchase three firearms from Kevin Bates, a man whom Mr. Johnson had identified to the police as a "gun guy." The sale was to take place at a gas station. To facilitate the deal, Officer Howard Fox supplied Mr. Johnson with over $300 that had previously been photocopied by the police. Mr. Johnson was also equipped with a police-provided cell phone and a hidden video recorder.
>
> **[¶5]** When it came time for the deal, Mr. Bates told Mr. Johnson that the gas station was too busy, so he drove Mr. Johnson to a side street. When they arrived, Mr. Bates left the car saying he needed to get the firearms from his girlfriend's apartment.
>
> **[¶6]** Mr. Johnson waited in Mr. Bates's parked car. After some time, Mr. Bates called to say that he was on his way back from his girlfriend's apartment. Minutes later, two men with guns approached the car. The hidden video recorder captured the incident. The men searched Mr. Johnson and threatened to shoot him. In addition to taking money and two cell phones from Mr. Johnson, the men discovered the video recorder, ripped it from his body and discarded it.
>
> **[¶7]** Some ten to 15 minutes later, Mr. Bates came back to the car, and Mr. Johnson told him that he had been robbed. Notably, Mr. Bates did not have firearms with him when he returned to the car.

3

Mr. Bates then drove Mr. Johnson back to the gas station and left him, telling him he would find out who had committed the robbery.

[¶8] Back at the gas station, Mr. Johnson told Officers Fox and Rebecca Napier that he had been robbed. The police officers issued a description of Mr. Bates's car. Officers in two unmarked police cars tailed Mr. Bates. Officer Joshua Fehrman, who was in an unmarked SUV, testified that he saw Mr. Bates pull over to allow two men to get into his car. Eventually, the two unmarked police cars managed to stop Mr. Bates's car.

[¶9] Officer Steve Mittermeier was in the other unmarked car. He testified that as he and Officer Charles Bell walked up to the car with their weapons drawn, he spotted Mr. Bates in the driver's seat, pointing a gun at him. Officer Mittermeier stated that the gun went "across the dashboard" and disappeared from sight. Officer Bell testified that he also saw Mr. Bates pointing a gun at him as the officers approached the car.

[¶10] Mr. Bates and his two passengers, later identified as Harold Chandler and Tywon Reliford, were removed from the car. A weapon was found in Mr. Chandler's waistband, and Officer Mittermeier retrieved a revolver from the floor of the car under the steering wheel. In addition, police officers recovered all but a $20 bill of the money that had been photocopied earlier by Officer Fox. Mr. Johnson later identified Messrs. Chandler and Reliford as the men who had robbed him.

[¶11] In his statement to police officers, Mr. Bates admitted that he had arranged a gun sale with Mr. Johnson. But he denied that he had set up the robbery. Messrs. Chandler and Reliford told a different story. Both testified that Mr. Bates had orchestrated the robbery. Mr. Reliford stated that Mr. Bates had provided both guns that were used in the robbery, while Mr. Chandler only could be certain that his gun had been provided by Mr. Bates. The stories of all the men differed on details about who knew whom first, who was in the car first and where the guns were handed to Messrs. Chandler and Reliford.

[¶12] Mr. Bates was indicted for aggravated robbery with firearm specifications, robbery, carrying a concealed weapon, having a weapon while under a disability, improperly handing a firearm in the car and felonious assault. The jury found him guilty of all the charges except felonious assault. The trial court merged the

> aggravated-robbery count with the robbery count and sentenced
> Mr. Bates to an aggregate sentence of 16 years in prison.

*State v. Bates*, 2015-Ohio-116, 2015 Ohio App. LEXIS 104 (1st Dist. Jan. 16, 2015).

On January 16, 2015, the First District Court of Appeals affirmed in part and reversed in part the judgment of the trial court. The Court of Appeals reversed the conviction for carrying a concealed weapon and modified the sentencing entry to reflect the reversal. Since the trial court ran the vacated sentencing concurrent with the improper handling of a firearm sentence, the aggregate sentence remains unchanged. *Id.*

Bates, through his appellate counsel, filed a timely appeal to the Ohio Supreme Court raising the following propositions of law:

1. Courts must merge allied offenses for which the state relied on the same conduct to obtain a conviction.

2. The court must exclude inadmissible, prejudicial, and irrelevant evidence aimed at inflaming the jury and not at providing actual evidence of guilt.

3. It is ineffective assistance of counsel for an attorney to invite and fail to object to prejudicial error.

4. When based on inherently unreliable and incompatible witness testimony that contradicts DNA evidence, a conviction is against the weight and sufficiency of the evidence.

(Appellant's Memorandum in Support of Jurisdiction, State Court Record, ECF No. 5, PageID No. 123).

On August 26, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Bates,* 143 Ohio St.3d 1441 (Ohio 2015). Bates, through his counsel, filed a motion for reconsideration which the Ohio Supreme Court declined. *State v. Bates,* 143 Ohio St.3d 1503 (Ohio 2015). Bates then filed the instant habeas corpus petition on December 20,

5

2015.[1]

# ANALYSIS

**Ground One:  Double Jeopardy**

In his First Ground for Relief, Bates claims that punishing him separately for aggravated robbery with a firearm specification, having weapons under a disability, and improper handling of firearms in a motor vehicle violates the Double Jeopardy Clause.  This claim was presented to the First District Court of as a claim under Ohio's allied offenses statute, Ohio Revised Code § 2941.25.  The First District decided the claim as follows, including Double Jeopardy analysis:

## IV. Allied Offenses

[*P26] In his third assignment of error, Mr. Bates asserts that the court erred when it failed to merge his convictions as allied offenses. He contends that the trial court's imposition of separate sentences for each of the offenses violated the Double Jeopardy Clause of the Fifth Amendment, and the corresponding Double Jeopardy Clause of the Ohio Constitution, Article I, Section 10.

[*P27] The Double Jeopardy Clauses "protect a defendant against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." *State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, 5 N.E.3d 603, ¶ 6, citing *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Here, Mr. Bates argues that he was subjected to multiple punishments for the same offense. "However, '[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" *Miranda, supra*, quoting *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). The question,

---

[1] December 20, 2015, is the date Mr. Bates deposited his Petition in the prison mailing system for filing here.

then, is whether the legislature intended to permit multiple punishments for the offenses. *Id*. To answer that question, we look first to R.C. 2941.25. *Id.* at ¶ 7.

**[\*P28]** Under R.C. 2941.25(A), a defendant may be convicted of only one of two or more allied offenses of similar import. But if the offenses are of dissimilar import or are committed separately or with a separate animus, the defendant may be convicted of all of them. R.C. 2941.25(B). Courts employ a two-prong[ed] test to determine if offenses are subject to merger. Under the first prong, courts must determine whether the offenses are of a similar import. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 13-15. In making this determination, a court must consider conduct of the accused. *Id.* at ¶ 15; *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. Under the second prong, a court must consider whether the offenses were committed separately or with a separate animus. *Washington* at ¶ 16. In other words, offenses will not merge if they were "committed separately," share a dissimilar import or were committed with a separate animus. *Id.* at ¶ 12.

**[\*P29]** In *Miranda*, the court explained that "'R.C. 2941.25 * * * is not the sole legislative declaration in Ohio on the multiplicity of indictments[,]'" and multiple punishments may be imposed when it is clear from an examination of the statute of the offense that the legislature intended separate punishments. *Miranda* at ¶ 10. The concurring opinion emphasized that when the legislature intends separate punishments, the offenses are of dissimilar import. *Miranda* at ¶ 25-26 (Lanzinger, J., concurring). Offenses are of dissimilar import and separate punishment is intended where they "are not alike in their significance and their resulting harm." *Id.* at ¶ 25.

**[\*P30]** Here, the weapons-under-a-disability charge is of a dissimilar import from the other offenses because the statute manifests a legislative purpose to punish the act of possessing a firearm while under a disability separately from any offense committed with the firearm. Thus, the offenses were not subject to merger.

**[\*P31]** Further, even absent our analysis of their import, we would conclude that the offenses should not have merged here. The evidence submitted at trial demonstrates that the offenses were separately committed. The weapons-under-disability crime was established by testimony from Messrs. Reliford and Chandler that Mr. Bates provided them with firearms so that they could rob Mr. Johnson. Mr. Bates necessarily, then, possessed a gun while under

> a disability prior to the robbery. The subsequent aggravated
> robbery was a separate act in which Mr. Bates was complicit.
> Finally, the improperly-handling-a-weapon offense occurred later
> when Mr. Bates was stopped by the police with at least one gun
> ready at hand in his car following the robbery. The trial court did
> not err when it did not merge the convictions for sentencing. The
> third assignment of error is overruled.

*State v. Bates, supra.*

When a state court decides on the merits a federal constitutional claim later presented to a
federal habeas court, the federal court must defer to the state court decision unless that decision
is contrary to or an objectively unreasonable application of clearly established precedent of the
United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131
S. Ct. 770, 785 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685,
693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000).

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution
affords a defendant three basic protections:

> It protects against a second prosecution for the same offense after
> acquittal.  It protects against a second prosecution for the
> same offense after conviction.   And it protects against multiple
> punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165 (1977), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717
(1969).  The Double Jeopardy Clause was held to be applicable to the States through the
Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 794 (1969).

The test for whether two offenses constitute the same offense for Double Jeopardy
purposes is "whether each offense contains an element not contained in the other."  *United States
v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932).
Where two offenses are the same for *Blockburger* purposes, multiple punishments can be
imposed if the legislature clearly intended to do so. *Albernaz v. United States*, 450 U.S. 333, 344

(1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); and *Garrett v. United States*, 471 U.S. 773, 779 (1985). *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009)("The current jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly indicated its intent to so provide, and recognizes no exception for necessarily included, or overlapping offenses.") The *Blockburger* test is a rule of statutory construction, not a constitutional test in itself. *Volpe v. Trim*, 708 F.3d 688 (6th Cir. 2013), *citing Albernaz.* "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Volpe, citing Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

An Ohio court of appeals decision of a double jeopardy claim which is limited to the application of Ohio Rev. Code § 2941.25 is entirely dispositive of the federal double jeopardy claim. *Jackson v. Smith*, 745 F.3d 206 (6th Cir. 2014), citing *State v. Rance*, 85 Ohio St. 3d 632 (1999), *overruled by State v. Johnson*, 128 Ohio St. 3d 153 (2010). "What determines whether the constitutional prohibition against multiple punishments has been violated is the state legislature's intent concerning punishment. Specifically, '[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" *Jackson v. Smith*, 745 F.3d 206 (6th Cir. 2014), quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

The First District's decision is neither contrary to nor an objectively unreasonable application of clearly established Supreme Court precedent. As that court held, the gun offenses were committed separately from one another. Furthermore, applying the *Blockburger* test, each of the offenses has an element not present in the other. For example, to prove a person has possessed a weapon under disability, both the possession and the disability must be proved. No

such disability need be proved for the improper handling in a motor vehicle charge, nor for the firearms specification to the aggravated robbery charge.  Since each of the offenses of conviction was committed separately from the others and each involved an element not present in the others, the convictions and sentences do not violate the Double Jeopardy Clause.  Mr. Bates' First Ground for Relief should therefore be dismissed on the merits.

**Second Ground for Relief:  Due Process**

In his Second Ground for Relief, Bates asserts his due process rights were violated by the admission of inadmissible evidence which he claims violated his due process rights.  These evidentiary issues were submitted as part of the first assignment of error on direct appeal and decided as follows:

### II. Evidentiary Issues

**[\*P13]** In his first assignment of error, Mr. Bates asserts that the trial court erred when it allowed the jury to hear inadmissible and highly prejudicial evidence about his character.

**[\*P14]** Mr. Bates contends that the court erred when it told the jury that he had previously been convicted of felony robbery. But Mr. Bates's counsel agreed to a written stipulation that specified that Mr. Bates had been convicted of felony robbery, and did not object when the assistant prosecuting attorney read the stipulation into the record before offering it as an exhibit. The court's statement during jury instructions was taken directly from the stipulation. Any error in reading the stipulation to the jury was invited error. *See State v. Eichelbrenner*, 1st Dist. Hamilton No. C-110431, 2013-Ohio-1194, ¶ 15.

**[\*P15]** Mr. Bates also argues that the trial court allowed in inadmissible other-acts testimony. Specifically, he complains about three sets of statements—statements that he made to Mr. Johnson while they were in Mr. Bates's car, statements that he made during a police interview with Officers Napier and Mittermeier and

statements that Officer Napier made during the interview.

[*P16] While in the car with Mr. Johnson, Mr. Bates mentioned that he was on "federal paper" (slang for being charged with a federal crime) and that he had sold ammunition to another person. During the police interview, Mr. Bates, presumably trying to convince the officers that he wanted to work with them, stated that he was a "f**ked up person" and that he knew of an upcoming transaction involving many firearms. In addition, he claims that the court allowed inadmissible other-acts testimony when Officer Napier repeatedly referred to him as a "gun guy." Mr. Bates did not object at trial, so we review for plain error. *See* Crim.R. 52(B). But all these statements concerning his prior gun dealings about which Mr. Bates now complains corroborated his claim that he was a middleman who set up the gun sale with Mr. Johnson but not the robbery. We conclude that Mr. Bates has not demonstrated "that the outcome of the trial would clearly have been different but for the trial court's allegedly improper actions." *See State v. Waddell,* 75 Ohio St.3d 163, 166, 1996 Ohio 100, 661 N.E.2d 1043 (1996).

[*P17] Mr. Bates also argues that the state improperly elicited testimony that he had been incarcerated pending trial. Mr. Bates complains of two specific instances of improper testimony. The first occurred when the state asked Officer Fox if Mr. Johnson had been housed in the Hamilton County Justice Center with Mr. Bates. Officer Fox responded that he had been informed that they were housed together, and that he had asked that Messrs. Bates, Chandler and Reliford be separated in the justice center. Mr. Bates did not object to Officer Fox's testimony. He has not demonstrated that the outcome of the trial would have been different had the testimony not been elicited, so we find no plain error. The other instance cited by Mr. Bates occurred when the state asked Officer Napier if Mr. Bates had been housed with Mr. Johnson. The court sustained Mr. Bates's objection and told the jury to disregard the question and the answer. We presume that the jury followed the court's instruction and conclude that no reversible error occurred. *See State v. Loza,* 71 Ohio St.3d 61, 75, 1994 Ohio 409, 641 N.E.2d 1082 (1994).

*State v. Bates, supra.*

Bates argues this second ground for relief in terms of Ohio R. Evid. 403(A)(Petition, ECF No. 1, PageID 23). Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497

U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).    "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Evidentiary questions generally do not rise to the constitutional level unless the error was so prejudicial as to deprive a defendant of a fair trial.  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988);  *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir. 1983);  *Bell v. Arn,* 536 F.2d 123 (6th Cir., 1976); *Burks v. Egeler*, 512 F.2d 221, 223 (6th Cir. 1975). Where an evidentiary error is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief. *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007); *Bugh v. Mitchell,* 329 F.3d 496 (6th Cir. 2003), *citing Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2000).  Courts have, however, defined the category of infractions that violate fundamental fairness very narrowly.  *Bugh, quoting Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)(*quoting Dowling v. United States*, 493 U.S. 342, 352 (1990)).  "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000)(*quoting Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).  "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."  *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court refused to reach the issue in *Estelle v. McGuire*. 502 U.S. 62 (1991).  Mr. Bates cites *Bugh* in favor of his position, but it is actually opposed.

With respect to each one of the evidentiary issues, the First District determined there was no violation of Ohio evidence law. It did not consider any possible constitutional question because those questions were not presented to it. In that sense Mr. Bates failed to fairly present his due process claim to the Ohio courts and has therefore procedurally defaulted the claim.

Those portions of the claim on which no objection was made in the trial court are also procedurally defaulted because the First District reviewed them only for plain error and that constitutes enforcement of Ohio's contemporaneous objections rule. Reservation of authority to review in exceptional circumstances for plain error is not sufficient to constitute application of federal law. *Cooey v. Coyle,* 289 F.3d 882, 897 (6th Cir. 2002); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000). An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir.  2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).

If on the other hand, the Court treats the constitutional claim as having been fairly presented, the First District's disposition is neither contrary to nor an objectively unreasonable application of Supreme Court precedent. In order to prove that Bates was guilty of having weapons under disability, it had to prove the prior disability; trial counsel minimized the damage from this proof by negotiating a stipulation. Bates' second ground for relief is therefore without merit.

**Ground Three: Ineffective Assistance of Trial Counsel**

In his Third Ground for Relief, Mr. Bates claims he received ineffective assistance of trial counsel when his attorney allowed the prejudicial testimony to be admitted and when he stipulated to the prior conviction. This claim was also presented to the First District, although not as a separate assignment of error. The court held:

> **[\*P21]** Nor has Mr. Bates demonstrated that his counsel was ineffective for failing to object to prejudicial evidence. As discussed above, much of the evidence to which Mr. Bates now objects played into his defense narrative that he had set up the gun sale but not the robbery. We will not second guess counsel's decision not to object to the evidence. To the extent that some of the evidence was objectionable, we are unable to say that, on the record before us, the result of the trial would have been different had counsel objected. *See Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

*State v. Bates, supra.*

This claim was argued as a constitutional claim to the First District which applied the correct constitutional standard as adopted in *Strickland, supra.* As with other constitutional decisions by state courts being reviewed in habeas corpus, we defer to the state court ruling unless it is an objectively unreasonable application of Supreme Court precedent. Here the First District makes the reasonable analysis that counsel's strategy was to portray Mr. Bates to the jury in the way he himself portrayed his role to the arresting officers: the gun broker, not the person who set up the armed robbery. Since the jury was going to hear Mr. Bates' admissions in any event, his best hope was to characterize them as consistent with his own story about the crimes. His trial attorney's strategy was not inconsistent with that approach. Ground Three should also be dismissed with prejudice.

14

**Ground Four:  Insufficient Evidence**

In his Fourth Ground for Relief, Bates argues his conviction is based on insufficient evidence and is against the weight of the evidence.  A weight of the evidence claim is not a federal constitutional claim.  *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).  This Court may not therefore review the First District's decision on this question of state law.  However, because it takes more evidence to prevail on a manifest weight claim than on an insufficiency claim, a state court finding that the verdict is not against the manifest weight of the evidence implicitly also holds that there is sufficient evidence. *Nash v. Eberlin,* 258 Fed. Appx. 761, 2007 U.S. App. LEXIS 29645 (6th Cir. Dec. 14, 2007); *Ross v. Miller*, No. 1:10-cv-1185, 2011 U.S. Dist. LEXIS 65082 (N.D. Ohio May 10, 2011)(White, M.J.); *Hughes v. Warden,* No. 1:10-cv-091, 2011 U.S. Dist. LEXIS 54131 (S.D. Ohio Apr. 27, 2011)(Merz, M.J.).

An allegation that a verdict was entered upon insufficient evidence does state a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship,* 397 U.S. 358 (1970); *Johnson v. Coyle,* 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc).  In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship,* 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006);

*United States v. Somerset,* 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was

recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law

which determines the elements of offenses; but once the state has adopted the elements, it must

then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

As Ohio appellate courts often do, the First District considered these two claims together

and held:

### III. Sufficiency and Weight of the Evidence

#### A. Aggravated Robbery

[*P23] Mr. Bates's second assignment of error is that his convictions were against the weight and sufficiency of the evidence. He argues that his conviction for aggravated robbery was based in large part on the testimony of Messrs. Chandler and Reliford, who, in Mr. Bates's view, did not give credible testimony. As to the sufficiency argument, our review of the record reveals that the state adduced substantial, credible evidence from which the jury could have reasonably concluded that the state had proved beyond a reasonable doubt the elements of complicity to aggravated robbery. *See State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. And our review of the entire record fails to persuade us that the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse Mr. Bates's conviction for aggravated robbery and order a new trial. *See State v. Thompkins,* 78 Ohio St.3d 380, 386-387, 1997 Ohio 52, 678 N.E.2d 541 (1997). It was for the jury to assess the witnesses' credibility and the video evidence.

#### B. Weapon Under a Disability and Improper Handling of a Firearm

[*P24] Likewise, the state presented more than sufficient evidence to support the convictions for having a weapon while under a disability and improperly handling a firearm. As discussed above, Mr. Bates stipulated to his disability—a prior conviction for felony robbery. According to the testimony of Messrs. Chandler and Reliford, Mr. Bates possessed at least one gun, which he provided to them to carry out the robbery. Also, both Officer

> Mittermeier and Officer Bell testified that they saw a revolver in Mr. Bates's hand as they approached his car. Additional evidence of the improperly-handling-a-firearm offense was presented in testimony that a gun that had been provided by Mr. Bates was found in the waistband of his passenger. *See* R.C. 2923.16(B). Neither of the convictions was against the manifest weight of the evidence.

*State v. Bates, supra.*  As evidence that the First District performed its task of weighing the evidence carefully, this Court notes that it did dismiss the carrying concealed weapon charge for insufficiency of the evidence. *Id.* at ¶ 25.

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and

then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger*, 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(per curiam).

As he did before the First District, Bates grounds his argument in his claim that co-defendants Chandler and Reliford should not have been believed (Petition, ECF No. 1, PageID 28). But the issue of witness credibility is a matter for the jury and not for an appellate or habeas court.

Bates emphasizes the conflicts between the testimony of Chandler and Reliford while at the same time arguing they had enough time after finding the wire on the confidential informant "to get their stories straight." (Compare, Petition, ECF No. 1 at PageID 18 and 19-20). He notes that the absence of his DNA on the weapons found disproves the police theory that he provided the guns for the robbery. *Id.* at PageID 19. However, it does not disprove his complicity in the

18

robbery: he himself argues that he "found two men, Tywon Reliford and Harold Chandler, who were willing to supply guns for the sale, with Petitioner as the middleman." *Id.* at PageID 17. This evidence is completely consistent with Bates' complicity in the robbery. The jury obviously believed that Bates had found two men with guns willing to perform a robbery at which he would not be present, but which he would set up. There is thus ample evidence in the record to support the robbery conviction.

As to the firearms charges, the jury heard from the co-defendants that Bates provided them with a gun to carry out the robbery. It also heard from two police officers that they saw a gun in Bates' hand. *State v. Bates, supra.* at ¶ 24.[2] Four eyewitnesses is plainly enough to meet the *Jackson v. Virginia*, 443 U.S. 307 (1979) standard.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge recommends that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

December 12, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

---

[2] The First District's summary of the evidence conflicts with Bates' summary in his Petition (ECF No. 1, PageID 18). However, despite being furnished with the complete record, Bates has given no record references to show his summary is accurate.

19

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).